## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA,**      :

                                  :        **3:23-CR-12**

        **v.**                    :        **(JUDGE MANNION)**

**ALLATEEF ALKAMIL ALI-WHITE,**    :

        **Defendant**             :

## <u>MEMORANDUM</u>

Pending before the court is the defendant's motion to suppress. (Doc. 21). Upon review of the motion and all related materials, the motion will be **DENIED** without the need for an evidentiary hearing.

The defendant is charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§846, 841(a)(1), and 841(b)(1)(C), and attempt to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§846(a)(1) and 841(b)(1)(C). The indictment stems from the seizure of a parcel by the Pennsylvania State Police ("PSP") Central Interdiction Unit

from a United Parcel Service ("UPS") facility in Dauphin County, Pennsylvania.[1]

On July 26, 2022, PSP intercepted what they deemed a "suspicious parcel." The parcel was a brown Staples Medium box determined to weigh approximately 7 pounds. It was addressed to "James White" at 329 E. Arch Street, Pottsville, Pennsylvania 17901. The parcel was sent Next Day Air by "Jason Mendez" from the UPS Store #5630 on Lakewood Boulevard, Bellflower, California 90706, and bore a UPS Tracking Number.

Suspecting that the package contained contraband, Trooper Wells of PSP applied for a search warrant for the parcel. As a basis for the warrant, Trooper Wells indicated that the origin of the parcel was from California, "a known source location for narcotics and contraband." Further, the parcel was not sent from an address directly associated with the sender, but from a third-party sender, i.e., the UPS Store. Trooper Wells provided that third-party shippers are commonly used by drug traffickers in an attempt to isolate themselves from law enforcement scrutiny. Trooper Wells pointed out that the parcel was shipped Next Day Air, which was a common tactic used by drug traffickers to both expediate the cross-country flow of

---

[1] The facts are taken from the parties' briefs as well as attached supporting documentation.

narcotics and to help limit exposure of the package. It was further stated that the recipient's name listed on the parcel, "James White," was not "associated" with the "Ship To" address, nor were there records of a "James White" in the Pottsville area. According to Trooper Wells, in his training and experience, drug traffickers often use fake names to insulate themselves from culpability in the event that a parcel containing contraband is discovered by law enforcement. Finally, the affidavit indicated that an open-source search did not reveal that the phone number listed for the sender to be associated with "Jason Mendez." The affidavit reflects that drug traffickers often use unassociated phone numbers as a precautionary measure in the event that a package is interdicted, as they have no desire to be reached in the event the parcel is damaged or misdelivered. The warrant was approved by a magisterial district judge in Harrisburg, Pennsylvania.

Upon receipt of the warrant, it was immediately executed and, within the parcel, PSP found five (5) separately wrapped bags, each containing approximately one (1) pound of suspected methamphetamine. A presumptive positive result for methamphetamine was returned by field testing, and lab testing confirmed the contents of the parcel to be 2.3 kilograms (or 5.07 pounds) of methamphetamine. PSP proceeded to

3

replace the methamphetamine with "sham" narcotics and reseal the package. Authorization was sought and obtained to place a mobile tracing device in the parcel.

On the following day, July 27, 2022, PSP conducted surveillance on the block of 329 E. Arch Street and observed the defendant pacing the street. He was observed to have walked over to 329 E. Arch Street and stand on the porch. It was noted that he "appeared to be waiting for the parcel delivery . . ." The defendant was waiting approximately one-half hour during which he checked his cell phone while pacing the sidewalk and streets by 329 E. Arch Street. An officer placed the parcel on the front porch of 329 E. Arch Street, after which the defendant walked across the street from his residence at 328 E. Arch Street, retrieved the parcel from the porch, and then returned to his residence. Shortly after the defendant entered his own residence, the mobile tracking device activated triggered by the opening of the package and the defendant was observed fleeing from his residence. The defendant was then arrested.

A second search warrant was applied for and executed on the defendant's cellular phone, and another search warrant was obtained for the defendant's residence. In conducting the search of the defendant's residence, the UPS package and "sham" drugs were retrieved, as were

drugs and related paraphernalia. In addition, numerous legitimate items of mail were located, none of which identified the defendant as "James White." Although the defendant is known to have "aka's", a review of the defendant's criminal history does not reveal "James White" as one of them.

As mentioned, on January 24, 2023, a grand jury returned an indictment against the defendant charging him with conspiracy to distribute and possess with intent to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine. On February 28, 2023, the defendant entered a plea of not guilty.

The defendant subsequently filed the pending motion to suppress in which he argues that he had a reasonable expectation of privacy in the delivery and in the contents of the parcel. He argues that the parcel was detained and removed from the UPS facility without reasonable suspicion by the PSP. And, finally, he argues that, although PSP applied for and was granted a search warrant for the package, the affidavit in support of the search warrant lacks probable cause. For these reasons, the defendant seeks to have all evidence obtained from the initial seizure of the parcel and its subsequent search suppressed as in violation of his Fourth Amendment right to be free from unreasonable searches and seizures and as fruit of the poisonous tree. The defendant argues this would include the

search warrant obtained and executed by PSP for his residence at 328 E. Arch Street, Pottsville, PA, as well as the search of his cell phone and statements made by him to law enforcement officers.

Initially, the parties agree that the defendant may bring a Fourth Amendment challenge to the seizure and search of the UPS parcel, if he had a reasonable expectation of privacy in the package. Whether the defendant had a reasonable expectation in the package would include consideration of whether the defendant had a subjective expectation of privacy in the package and whether that subjective expectation of privacy is one that society would recognize as reasonable and legitimate. *See Rakas v. Illinois*, 439 U.S. 128, 143 n.2 (1978).

In this case, the government argues that the defendant did not have a reasonable expectation of privacy in the package and he, therefore, lacks standing to mount a constitutional challenge. Specifically, the government argues that, by using a fictitious name and someone else's address, the defendant relinquished control over the contents of the package such that, whatever his subjective expectation of privacy, he did not have an objectively reasonable expectation of privacy that society would recognize as legitimate.

In response, the defendant argues that the facts of this case clearly demonstrate that he had an expectation of privacy in the package. Specifically, he argues that he manifested "control" over the package, as he was surveilled by officers awaiting the package's arrival and retrieving the package immediately after delivery. The defendant argues that he was the intended recipient of the package, and it is of no consequence that the package was addressed to a fictitious name and delivered to an address across the street from his actual address. For any number of reasons, the defendant argues that individuals may choose to have packages delivered to addresses other than their own or may wish to send or receive a package using a fictitious name.

Even if the court were to assume that the defendant had a reasonable expectation of privacy in the package giving rise to standing to bring a constitutional challenge,[2] his initial challenge asserts that PSP lacked reasonable suspicion to detain the UPS package in the first place. "Reasonable suspicion that a mail parcel contains contraband for purposes

---

[2] The court notes that "standing to challenge a search is not a threshold issue that must be decided before reaching the question of whether a search was or was not constitutional." *U.S. v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011). However, if the court were to find the search unconstitutional, the court would be required to address the issue of whether the defendant has standing. *See U.S v. Stearns*, 597 F.3d 540, 553-54 (3d Cir. 2010).

of temporary detention is evaluated under a totality of the circumstances standard." *United States v. Hayes*, 603 F. App'x 74, 75 (3d Cir. 2015) (citations omitted). While a "mere hunch" is insufficient to establish reasonable suspicion, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted); *see also United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002) (noting that an officer's "experience and training [are] indispensable to his evaluation of reasonable suspicion."); *United States v. Colon*, 386 F. App'x 229 (3d Cir. 2010).

Information relating to the experience and training of Trooper Wells is contained within the record and is not challenged by the defendant. That information reflects that Trooper Wells has been employed with the PSP since 2013. During his employment with PSP, Trooper Wells conducted numerous narcotics investigations, which involved the possession, possession with intent to deliver, drug delivery resulting in deaths and homicide investigations where narcotics were involved. Moreover, Trooper Wells attended schools and trainings pertaining to the Controlled Substances, Drug, Devices, and Cosmetic Act of 1972, many of which

8

involved covert surveillance, controlled delivers of narcotics, intercepting narcotics during transportation, drug interdiction, and the execution of search warrants. At the relevant time, Trooper Wells was assigned to the Drug Law Enforcement Division, Central Interdiction Unit.

As outlined above, Trooper Wells provided several bases for detention of the package at issue. Specifically, the suspicious parcel was a brown Staples Medium box, seven pounds in weight. Upon examination of the package, the listed sender's address was identified as a third-party shipper, i.e., a UPS store. Trooper Wells noted that third-party shippers are commonly used by drug traffickers in an attempt to isolate themselves from law enforcement. The origin of the parcel was California, a known source location for narcotics and contraband. The parcel was shipped Next Day Air, a common shipping method used by drug traffickers to expedite by transporting packages across the country and limit exposure of the package to law enforcement. A records search showed the recipient's name on the parcel, "James White" was not associated with the "Ship To" address of 329 E. Arch St., Pottsville, PA, and that "James White" was not associated with the town of Pottsville, PA. Trooper Wells noted that drug traffickers will use fictitious names in order to deny culpability of the parcel if discovered by law enforcement. Finally, a records search indicated that

the phone number listed on the shipping label had no association with the sender "Jason Mendez." In his experience, Trooper Wells indicated that drug traffickers will use unassociated telephone numbers, so that, if the parcel is lost or damaged during shipping, the traffickers can deny any culpability of its contents.

The defendant argues that each of these individual factors can have an innocent explanation. While it is true that each of these factors viewed in isolation may be susceptible to an innocent explanation, the court looks to the totality of the circumstances to determine whether there was reasonable suspicion for Trooper Wells to detain the parcel. *See Arvizu*, 534 U.S. at 277-78; *United States v. Demoss*, 279 F.3d 632, 636 (8th Cir. 2002) ("Characteristics consistent with innocent use can, when taken together, give rise to reasonable suspicion."). The court finds that, collectively, the above factors provided Trooper Wells with reasonable suspicion to detain the package to seek a search warrant.

With that, the defendant argues that, even if the court finds that Trooper Wells had reasonable suspicion to temporarily detain the parcel, his affidavit in support of the application for the search warrant lacked probable cause. And, because the search warrant issued was based on an

10

affidavit that lacked probable cause, the defendant argues that the good faith exception does not apply in this case.

Initially, "where 'a suppression motion poses no Fourth Amendment question of broad import,' it is 'prudent for a reviewing court to immediately turn to the question of whether the officers acted in good faith.'" *United States v. Primo*, 223 F. App'x 187, 189 (3d Cir. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 265 (1983) (White, J., concurring in the judgment); *see United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 145 (3d Cir. 2002); *see also United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint ... dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter.")). Here, because the court finds that there is nothing novel about the defendant's argument that the factors relied upon by Trooper Wells in his affidavit in support of the search warrant were insufficient to establish probable cause, the court will turn directly to the issue of whether the good faith exception should apply.

The exclusionary rule calls for the suppression of evidence obtained during an unconstitutional search or illegal seizure. The Supreme Court

regards exclusion of evidence as an "extreme sanction" that "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule," which center on deterring police misconduct. *United States v. Leon*, 468 U.S. 897, 916, 918 (1984); *see also United States v. Werdene*, 883 F.3d 204, 218 (3d Cir. 2018) ("the exclusionary rule 'applies *only* where it result[s] in appreciable deterrence.'") (emphasis original) (citations omitted).

In *Leon*, the Supreme Court recognized that the goals of deterrence would not be furthered "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon,* 468 U.S. at 916, 920. "Therefore, if an officer has obtained a warrant and executed it in good faith, 'there is no police illegality and thus nothing to deter.'" *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 145 (quoting *Leon* at 921).

In *Werdene*, 883 F.3d at 216, the Third Circuit concluded that "in each of the Supreme Court's good-faith exception cases, 'the Court has not focused on the type of Fourth Amendment violation at issue, but rather confined the 'good-faith inquiry ... to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" (citations omitted).

"The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *U.S. v. Loy*, 191 F.3d 360, 367 (3d Cir.1999) (quoting *Leon*, 468 U.S. at 922 n.23). "The fact that an officer executes a search pursuant to a warrant typically 'suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.'" *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 146 (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001) (citation omitted). There are, however, four situations in which an officer's reliance on a warrant is not reasonable and the good faith exception will not apply, namely:

> (1)   when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2)   when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3)   when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
>
> (4)   when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 309 (quoting *United States v. Williams*, 3 F.3d 69, 74 n.4 (citation omitted); *see also Werdene*, 883 F.3d at 217.

In this case, the only situation which the defendant touches upon to obviate the good faith exception is that the warrant was based on an affidavit which lacked probable cause. Here, the defendant argues that Trooper Wells prepared an affidavit of probable cause for a search warrant using the same facts underlying his reported reasonable suspicion to detain the package. The defendant argues that, because Trooper Wells both detained the package and swore out the search warrant on the same facts, without any intervening act to ripen reasonable suspicion to probable cause, the good faith exception should not apply.

For a defendant arguing that a warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable", the "threshold for establishing this exception is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). An affidavit is "so lacking in indicia of probable cause" when it contains nothing more than a bare bones assertion that evidence will be found in the place searched. *United States v. Brewer*, 2015 WL 2250150, at *5 (M.D. Pa. May 12, 2015) (citing *Leon*, 468 U.S. at 925). An affidavit is

14

a "bare bones" affidavit where it relies only on an officer's unsupported belief that probable cause exists. *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (citing *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005); *see also Gates*, 462 U.S. at 239 (identifying the affidavits in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964), as "bare bones" affidavits because each contained only an officer's belief that probable cause existed without providing any factual details). In *United States v. Williams*, 3 F.3d at 74, the Third Circuit found that this exception did not apply where the affidavit presented several facts indicating illegal activity.

Here, as already discussed above, the affidavit was not a bare bones document. It did not simply contain Trooper Wells' belief that probable cause existed without any supporting facts. Instead, the affidavit contained Trooper Wells' considerable experience and training in the area of narcotics trafficking. Moreover, it set forth several factual bases indicative of criminal behavior. The affidavit concluded that, based upon his knowledge and experience, each of these factual bases are indicative of steps taken by drug traffickers who utilize the mails to move illegal substances. Like in *Williams*, the magistrate in this case was called on to

15

assess facts demonstrating illegal activity and to exercise his sound judgment in finding probable cause. Thus, Officer Wells who executed the search warrant acted reasonably in relying on the warrant's authority. *See United States v. Smith*, 219 F. App'x 242, 245 (3d Cir. 2007).

As a final matter, "Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure permits defendants to file 'motions to suppress evidence' before trial, but evidentiary hearings on such motions are not granted as a matter of course." *U.S. v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing Rule 12(c). "To require a hearing, a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" *Id*. (quoting *U.S. v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Id*. (citations omitted). The court in *Hines*, 628 F.3d at 105, stated that "the purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct - its purpose is not to assist

16

the moving party in making discoveries that, once learned, might justify the motion after the fact."

The court finds that an evidentiary hearing is not required in the present case regarding the search of the parcel since the defendant's suppression motion does not "set forth and identify for the court specific and concrete 'issues of fact material to the resolution of his constitutional claim.'" *Id*. (quoting *Voigt*, 89 F.3d at 1067). As discussed, the defendant has not offered sufficient support for his contentions challenging the constitutionality of the search of the parcel. As such, the court, in its discretion, finds that there is no need for an evidentiary hearing regarding the defendant's suppression motion.

Based on the foregoing, the court finds that there was reasonable suspicion to detain the parcel at issue. Moreover, the court concludes that the good faith exception precludes suppression in this case. As such, the defendant's motion to suppress **(Doc. 21)** will be **DENIED** without the need for a hearing. An appropriate order will be issued.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 25, 2023**
23-12-01

18